IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TERRI LEFF, | ) | |
| | ) | 14-cv-1623 |
| | ) | |
| Plaintiff, | ) | Honorable Milton I. Shadur |
| | ) | Magistrate Judge Jeffrey Cole |
| vs. | ) | |
| | ) | |
| CITIBANK, N.A, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND STAY ACTION**

### I.  INTRODUCTION AND BACKGROUND

In this case, Plaintiff asserts a claim for violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), based on allegations that Citibank, N.A. ("Citibank") supposedly provided inaccurate credit information regarding a credit card account issued to Plaintiff over fourteen years ago (the "Account"). Plaintiff alleges that her deceased husband supposedly opened the Account in her name without her authorization, and that she only discovered the supposed "fraud" when her husband committed suicide in 2012. Regardless the merits of Plaintiff's claims (or lack thereof), the fact is that Plaintiff's Account is subject to a written arbitration agreement, which is contained in the terms and conditions governing the Account. Indeed, as reflected in the attached Declaration of Elizabeth Barnette ("Barnette Decl."), Citibank (or its predecessors), statements for the Account (which has a balance in excess of $25,000), as well as Card Agreements and changes in terms, were mailed to Plaintiff's address for over a decade. Simply put, the evidence here supports enforcement of the Card Agreement and the arbitration agreement, notwithstanding Plaintiff's unsubstantiated allegations of fraud.

The Arbitration Agreement is a valid and enforceable agreement to arbitrate under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), and South Dakota law (which applies here pursuant to a choice-of-law provision in the underlying Card Agreement), and completely encompasses the Plaintiff's claims in this lawsuit. By its terms, the Arbitration Agreement broadly encompasses "any claim, dispute, or controversy" between Plaintiff and Citibank "arising from or relating to" the Account, the Card Agreement, and her relationship with Citibank. Finally, the Arbitration Agreement must be enforced pursuant to the Federal Arbitration Act, 9 U.S.C. Section 1, et seq. ("FAA"). Indeed, the FAA mandates a liberal policy favoring the enforcement of arbitration agreements and requires that any doubts regarding whether a dispute is subject to arbitration be resolved in favor of arbitration.

Over the last several years, the United States Supreme Court has issued a series of decisions confirming that the FAA, which unquestionably applies here, "reflects an 'emphatic federal policy in favor of arbitral dispute resolution'"[1] and that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'"[2] Indeed, the decision in *AT&T Mobility v. Concepcion,* 131 S. Ct. 1740, 1744, 179 L. Ed. 2d 742 (2011), makes absolutely clear that arbitration agreements must be enforced as written. The FAA strongly favors the validity and enforceability of arbitration agreements and, except in limited circumstances not present here, such agreements must be enforced according to their

---

[1] *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

[2] *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 1748, 179 L. Ed. 2d 742 (2011); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683, 130 S. Ct. 1758, 1774 L. Ed. 2d 605 (2010) (confirming that "[u]nderscoring the consensual nature of private dispute resolution" is the notion that "parties are 'generally free to structure their arbitration agreements as they see fit.'") (citations omitted).

express terms in both federal and state courts, and regardless of whether the claims asserted arise under federal or state law. *See, e.g., Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013); *Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012); *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669, 181 L. Ed. 2d 586 (2012). Moreover, as discussed below, Courts across the country have repeatedly granted motions to compel arbitration based on the very same Citibank Arbitration Agreement presented in this case. The result should be no different here. Accordingly, the Motion should be granted, and this dispute submitted to arbitration on an individual basis pursuant to the parties' arbitration agreement.

## II. STATEMENT OF FACTS

As discussed in the accompanying Barnette Declaration, the credit card Account at issue is an AT&T Universal Card credit card account currently ending in 3529 that was issued to Plaintiff on or about February 9, 1998 ("Account"). Barnette Decl., ¶ 4. Although the application for the Account is no longer available, periodic billing statements for the Account were mailed to Plaintiff at Plaintiff's address (536 Hummingbird Ln, Deerfield, IL 60015-3625) for over a decade. *Id.* ¶ 5, Ex. 1. The Account was originally issued by Universal Bank, N.A. *Id.* ¶ 6, Ex. 2. In October 2001, Universal Bank added an Arbitration Agreement to the Account by sending a change-in-terms notice with the periodic statement for the Account. *Id.* ¶ 8-14, Exs. 3, 4. Indeed, the October 2001 billing statement included the following special message:

> PLEASE SEE THE ENCLOSED CHANGE IN TERMS NOTICE FOR IMPORTANT INFORMATION ABOUT THE BINDING ARBITRATION PROVISION WE ARE ADDING TO YOUR CARDMEMBER AGREEMENT.

See Barnette Decl., ¶ 8, Ex. 4. Furthermore, in November 2001, a monthly periodic billing statement for the Account was mailed to Plaintiff, which included the following follow-up message:

> WITHIN THE LAST 30 DAYS YOU SHOULD HAVE RECEIVED AN IMPORTANT NOTICE ABOUT ADDING BINDING ARBITRATION TO YOUR CARDMEMBER AGREEMENT. IF YOU WOULD LIKE ANOTHER COPY PLEASE CALL THE CUSTOMER SERVICE NUMBER LISTED ABOVE.

*Id.* ¶ 9, Ex. 5. Plaintiff had the ability to opt out of the Arbitration Agreement, but did not do so. *Id.* ¶ 10-12.

In January 2002, Universal Bank, N.A. merged into Citibank (South Dakota), N.A., a national bank located in South Dakota.[3] Barnette Decl., ¶ 15, Ex. 8. Cardholders, including the Plaintiff, were notified of the merger, including via a statement message on their January-February 2002 periodic billing statements. The statement message provided in relevant part: "Now the words "we, us and our" as used in your Cardmember Agreement refer to Citibank (South Dakota), N.A. and the terms and enforcement of the Cardmember Agreement will be governed by federal law and the law of South Dakota." *Id.*

In June 2004, a new complete Card Agreement was mailed to Plaintiff, which includes the Arbitration Agreement (as well as the South Dakota choice of law provision). Barnette Decl., ¶ 16, Ex. 9. Critically here, the Arbitration Agreement provides for the election of mandatory binding arbitration as follows:

> **ARBITRATION**
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO**

---

[3] Citibank (South Dakota), N.A. later merged into Citibank, N.A. effective July 1, 2011. Barnette Decl., ¶¶ 1, 15.

COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

*Agreement to Arbitrate:*

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

*Claims Covered:*

- **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

- **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir assignee, or trustee in bankruptcy.

\* \* \*

- **Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it

> to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").
>
> * * *

Barnette Decl. Ex. 9, pp. 9-13 (bolding and italics in original). The Arbitration Agreement also includes terms allowing for the arbitration to proceed in a locale convenient to the cardholder; and allowing for the reimbursement and/or advancement of arbitration fees.

In February 2005, Citibank mailed a change-in-terms notice making certain changes to the Arbitration Agreement -- removing JAMS as an arbitration provider and revising the severability clause. Barnette Decl., ¶ 18, Ex. 11. Plaintiff had the opportunity to opt out of the changes to the arbitration provision (not the Arbitration Agreement itself), but did not do so. Instead, as with all of the Agreements and change-in-terms that were mailed to her, Plaintiff continued to use and make payments on the Account after receiving the February 2005 change-in-terms. *See* Barnette Decl., Ex. 1 (periodic statements showing transactions).

Citibank's records reflect that Citibank was first notified by the Plaintiff on September 20, 2012 that the Plaintiff suspected her husband, Paul Leff, opened the Account, and that her husband died on September 11, 2012. Barnette Decl., ¶ 19. Citibank conducted an investigation, however, and concluded that Plaintiff should be responsible for the Account. *Id.* ¶ 20, 21. That conclusion was based on several factors. For example, payments on the Account were made from a JP Morgan Chase Bank, N.A. ("Chase") checking account ending in 94541 ("Chase Checking Account") which reflected Plaintiff's name and address, and various convenience checks drawn on the Account were deposited to the Chase Checking Account. *Id.* In contrast, Plaintiff would have this Court (and Citibank) believe that she was the victim of a decade-long fraud scheme undertaken by her deceased husband, who would have had to intercept all of Plaintiff's mail for that entire time period and open multiple financial accounts. There is,

however, no evidence that supports this conclusion. Accordingly, the Arbitration Agreement should be enforced.

### III. ARGUMENT

#### A. Plaintiff's Claims Are Subject To Binding Arbitration Pursuant To The Arbitration Agreement Governing The Account And Settled Authority.

##### 1. Under The FAA, This Court Must Compel Arbitration Pursuant To The Express Terms Of The Arbitration Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 1207, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *Perry v. Thomas*, 482 U.S. 483, 490-91, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987). The United States Supreme Court has made clear that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).[4]

---

[4] Here, there is no question that the FAA applies to this dispute because the credit card account involves Plaintiff, a resident of Illinois, and Citibank, a national banking association located in Sioux Falls, South Dakota. Barnette Decl, ¶¶ 1, 15. Indeed, the Arbitration Agreement explicitly states that "[t]his arbitration provision is governed by the [FAA]." *See id.*, Ex. 9, p. 10.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Perry*, 482 U.S. at 490 (stating that arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'") (citations omitted). Indeed, as recently confirmed by the Supreme Court, the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 131 S. Ct. at 1748; *accord Stolt-Nielsen*, 130 S. Ct. at 1773; *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

Under the FAA, a court will grant a motion to compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing 9 U.S.C. § 4). "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation.... Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012) (citations omitted). Courts must enforce arbitration agreements according to their terms, "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit Corp. v. Greenwood*, ––– U.S. –––, 132 S.Ct. 665, 669, 181 L.Ed.2d 586 (2012). The FAA "creates a presumption in favor of arbitrability." *Palidino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1057

(11th Cir. 1998).[5] Furthermore, it is well settled that a party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000).

Numerous courts across the country, including Illinois federal courts, have upheld and enforced virtually identical arbitration agreements utilized by Citibank and its affiliates. *See, e.g., Owca v. Citibank, N.A.*, et al., 07-cv-00864, 2007 WL 2198982, at *2 (N.D. Ill. July 31, 2007), *Sesto v. Nat'l Fin. Sys., Inc.*, 04 C 7768, 2005 WL 6519430, at *3-4 (N.D. Ill. Apr. 25, 2005); *Cayanan v. Citi Holdings, Inc.*, 928 F.Supp.2d 1182 (S.D. Cal. 2013); *Coppock v. Citigroup, Inc.*, C11-1984-JCC, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013); *Ackerberg v. Citicorp USA, Inc.*, 898 F.Supp.2d 1172 (N.D. Cal. 2012); *Guerrero v. Equifax Credit Info. Servs., Inc.*, CV 11-6555 PSG (PLAx), 2012 WL 7683512 (C.D. Cal. Feb. 24, 2012); *Conroy v. Citibank, N.A.*, CV 10-04930 SVW (AJWx), 2011 WL 10503532 (C.D. Cal. Jul. 22, 2011); *Orman v. Citigroup, Inc.*, 11 Civ. 7086(DAB), 2012 WL 4039850 (S.D.N.Y. Sept. 12, 2012); *Daugherty v. Experian Information Solutions, Inc.*, 847 F.Supp.2d 1189 (N.D. Cal. 2012); *Eaves-Leonos v. Assurant, Inc.*, 3:07-CV-18-S, 2008 WL 80173, at *6-7 (W.D. Ky. Jan. 8, 2008 as amended Jan. 10, 2008); *Ingram v. Citicorp Credit Servs., Inc. (USA)*, 05-2095 B/An, slip op., 2005 WL 6518077 (W.D. Tenn. July 11, 2005), mag. recomm. adopted at 2005 WL 6518076 (W.D. Tenn. Aug. 25, 2005); *Citibank USA v. Howard*, 4:02CV64LN, slip. op. at 7, 2002 WL

---

[5] The FAA preempts any state law "to the extent that [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in passing the FAA. *Volt Info. Scis.*, 489 U.S. at 477 (internal quotation marks and citations omitted); *see also Southland Corp*, 465 U.S. at 16 (striking down California law that sought to insulate certain issues from arbitration).

34573997 (S.D. Miss. Aug. 30, 2002); *Dumanis v. Citibank (South Dakota), N.A.*, No. 07-cv-6070 (CJS), 2007 WL 3253975, at *3 (W.D.N.Y. Nov. 2, 2007); *Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333 (M.D. Ala. 2003); *Barker v. Citibank (South Dakota), N.A.*, No. A:03CA-130JN, slip. op., 2003 WL 25943008 (W.D. Tex. May 30, 2003); *Lowman v. Citibank (South Dakota), N.A.*, CV-05-8097 RGK (FMOx), 2006 WL 6108680, *3-4 (C.D. Cal. Mar. 24, 2006); *Egerton v. Citibank, N.A.*, CVO36907DSF (PLAX), 2004 WL 1057739, *2 (C.D. Cal. Feb. 18, 2004). The result should be the same here because Plaintiff's claims are clearly encompassed by the Arbitration Agreement contained in the Card Agreement.

### 2. The Arbitration Agreement Is Valid And Enforceable Under South Dakota Law.

The Card Agreement governing Plaintiff's Account, which contains the Arbitration Agreement, is expressly governed by a South Dakota choice-of-law provision. *See* Barnette Decl., ¶ 15, Ex. 8, ¶ 16, Ex. 9, p. 13. Thus, while the FAA exclusively governs the Arbitration Agreement's enforceability according to its terms, South Dakota law governs the determination of whether a valid agreement to arbitrate exists.[6] *See Owca*, 1:07-cv-00864 at p. 5 (applying South Dakota law in determining validity of Citibank's Arbitration Agreement; *Ackerberg*, 898 F.Supp.2d at 1176-77 (finding that "South Dakota and federal law govern the parties' agreements here" and that application of California law "has been squarely rejected"); *Cayanan*, 2013 WL 784662 at *11-12 (holding that South Dakota law applies to Citibank's credit card

---

[6] "Illinois courts generally adhere to a contract's choice of law provisions." *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007); *accord Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-05 (7th Cir. 2004) (stating that Illinois respects a contract's choice of law clause if the contract is valid and the law does not contradict Illinois's fundamental public policy); *Kohler v. Leslie Hindman, Inc.*, 80 F.3d 1181, 1184-85 (7th Cir. 1996).

agreement); *Daugherty*, 847 F. Supp. 2d at 1193-95 (holding that South Dakota law applied to Arbitration Agreement pursuant to choice-of-law provision in Card Agreement); *Eaves-Leonos*, 2008 WL 80173, *6 (holding that "South Dakota law applies to determine the validity of the Citibank arbitration agreement."); *Dumanis*, 2007 WL 3253975, *2 (reasoning that, "due to the Card Agreement's choice of law provision, the issue of unconscionability must be resolved using the law of South Dakota"); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").

The Card Agreement governing the Account, which includes the Arbitration Agreement, clearly states that by using the Account Plaintiff agreed to be bound by all terms of the Card Agreement, including the Arbitration Agreement. Barnette Decl., Ex. 9, p. 1 ("This Agreement is binding on you unless you close your account within 30 days of receiving the card and you have not used or authorized use of the card."). Under South Dakota law, by using the Account, Plaintiff agreed to be bound by the terms of the Card Agreement. *See* S.D.C.L. § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer with reference to any accepted credit card, and any charges made with the authorization of the primary card holder."). Indeed, numerous courts have found that use of a credit card account constitutes acceptance of the terms, including the Arbitration Agreement. *See, e.g.,* Owca, 1:07-cv-00864 at pp. 5-6; *Ackerberg*, 898 F.Supp.2d at 1176 (citing numerous cases); *Cayanan*, 928 F.Supp.2d at 1199; *Taylor*, 292 F. Supp. 2d at 1338. Here, Plaintiff alleges in the Complaint that her deceased

husband opened the Account without her authorization; but her conclusory allegations denying that she entered into an Agreement with Citibank (particularly given the decade-long activity on the Account) are insufficient to raise a triable issue regarding the validity of the Arbitration Agreement. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) ("Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial."). Accordingly, Plaintiff's claims should be submitted to arbitration.

### 3. The Arbitration Agreement Clearly Encompasses Plaintiff's Claims.

Once it is determined that the parties have entered into a binding arbitration agreement, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); *see also McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes). Where the clause is broad, as is the case here, there is a heightened presumption of arbitrability such that "'[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 650; *accord Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (holding that, where the clause is broad, "then there is a presumption that the claims are arbitrable").

Here, the Arbitration Agreement extends to, "All Claims relating to your account, a prior related account, or our relationship," which "includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law …." Barnette Decl., Ex. 9, p. 9. As alleged in the Complaint, Plaintiff's claim arises entirely from credit reporting made in connection with the Account. Plaintiff's claims therefore clearly "relate to" the accounts and Plaintiff's relationship with Citibank. Furthermore, the Arbitration Agreement covers statutory claims, including Plaintiff's claims under the FCRA. It is well-settled that statutory claims are subject to arbitration just like any other claims. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("it is by now clear that statutory claims may be the subject of arbitration"); *Sarver v. Trans Union, LLC*, 264 F. Supp. 2d 691, 693 (N.D. Ill. 2003) (holding that FCRA claim is arbitrable). Accordingly, Plaintiff has no basis to argue that his claims here are not within the scope of the Arbitration Agreement.

### C. This Action Should Be Stayed Pending Arbitration.

The FAA provides that a court, upon determination that an action before it is subject to an enforceable arbitration provision, "shall … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 179 (3d Cir. 1998) ("If a party to a binding arbitration agreement is sued in a federal court on a claim that [plaintiff] has agreed to arbitrate, it is entitled under the FAA to a stay of the court proceeding pending arbitration."). Accordingly, Citibank requests that this Court stay the action pending completion of arbitration between the parties and all other appropriate relief.

Respectfully Submitted,

By: /s/ Todd A. Rowden

    Todd A. Rowden (ARDC No. 6201929)
    Emily L. Peel (ARDC No. 6290433)
    THOMPSON COBURN LLP
    55 East Monroe –37th Floor
    Chicago, IL 60603
    312.346.7500

    ***Attorneys for Citibank, N.A.***